**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **HANG GLIDE USA, LLC**, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 16 C 6905 |
| | ) |
| **COASTAL AVIATION** | ) |
| **MAINTENANCE, LLC**, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Co-plaintiffs Hang Glide USA, LLC ("Hang Glide"), AD Airlines, LLC ("AD") and Kent A. Heitzinger ("Heitzinger") have brought this civil action against several defendants (1) under the Computer Fraud and Abuse Act (18 U.S.C. § 1030), charging them with the intentional unauthorized access to and retention of Hang Glide's computers -- rendering information contained therein unavailable and thereby causing economic losses -- and (2) under the Lanham Act, charging them with commercial promotions that make misrepresentations about Hang Glide's services or commercial activities. Those defendants comprise Coastal Aviation Maintenance ("Coastal"), John Stinson ("Stinson"), Leon E. Monnier, IV ("Monnier") and Kenneth Snyder ("Snyder"), the latter two doing business as Florida Adventure Sports ("FAS"). Hang Glide[1] also brings a host of state law charges against various of those defendants under the supplemental jurisdiction auspices of 28 U.S.C. §1367: misappropriation of commercial trade secrets and state trade secrets, fraudulent acts, conversion of personal property, trespass to

---

[1] For convenience this opinion will refer only to Hang Glide on the plaintiffs' side of the "v." sign.

personal property, breach of fiduciary duty and breach of contract by a former employee and tortious interference with that employment contract by other defendants.

**Factual Background**

Hang Glide operated from airplane hangars to carry on its business, leasing one of them (Hangar A at the Fernandina Beach Municipal Airport) from Coastal for a term that ended in February 2015 (Complaint ¶¶ 9-11). At that time a month-to-month lease relationship began that ran from March 1 to the beginning of July 2015 (id. ¶ 11). During those months Hang Glide and AD operated three aircraft that they parked inside Hangar A, sharing a laptop computer located in the hangar that contained confidential information.[2] Hang Glide and AD employed Monnier as a flight instructor, pilot, aircraft maintenance overseer and manager (id. ¶ 15). They gave Monnier a key to the locked confidential papers, and Heitzinger told him not to share that key with anyone (id. ¶ 16). Snyder, a student of Hang Glide, was also given a key to the premises to enable him to access his own separate space in Hangar A (id. ¶ 17).

On July 1 Coastal demanded payment for rent that it said was late, saying that it would evict Hang Glide whether or not payment was made within a 3-day notice period (id. ¶¶ 18-19). Heitzinger then sent a payment under dispute, declaring that Hang Glide and AD would move out of the Hangar by July 11 (id. ¶ 20). At the same time Monnier and Snyder started a competing flight instruction business (allegedly in violation of Monnier's non-compete clause) that operated out of the same hangar, meanwhile blocking any use of the hangar by Hang Glide

---

[2] That confidential information included referral sources, customer lists, advertising content and venue and business plans (Complaint ¶ 12).

and AD (id. ¶ 21).³ Monnier also allegedly removed the computer and confidential papers from Heitzinger's trailer and blocked access to Hang Glide while he kept the key that Heitzinger had given him (id. ¶ 22). Stinson later returned the papers under a police order, but Monnier and Snyder kept the computer for four months, during which time they allegedly took confidential information and communicated with customers, fraudulently saying that FAS was replacing Hang Glide, once again undercutting terms of the non-compete clause (id. ¶¶ 23-24).

Hang Glide, AD and Heitzinger are asking for total damages of $150,000 under their numerous theories for recovery. All defendants other than Monnier counter by seeking dismissal of the case because of an asserted lack of personal jurisdiction, improper venue and multiple allegations of failure to state a claim.

## **Rule 12(b)(6) Standard**

Under Rule 12(b)(6) a party may move for dismissal for the "failure to state a claim upon which relief can be granted." Familiar Rule 12(b)(6) principles require the District Court to accept as true all of Hang Glide's well-pleaded factual allegations and to view those allegations in the light most reasonably favorable to plaintiffs as the nonmovants (Lavalais v. Vill. of Melrose Park, 734 F.3d 629, 632 (7th Cir. 2013)). But "legal conclusions or conclusionary allegations that merely recite a claim's elements" are not entitled to any presumption of truth (Munson v. Gaetz, 673 F.3d 630, 632 (7th Cir. 2012)).

In the past decade the Supreme Court made an important change in the evaluation of Rule 12(b)(6) motions via what this Court regularly refers to as the "Twombly-Iqbal canon," a usage drawn from Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), as more finely tuned in Erickson

---

³ In that respect the timing is not entirely clear, with Snyder alleging that Heitzinger abruptly terminated Monnier in the same period.

v. Pardus, 551 U.S. 89 (2007) (per curiam), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). That canon has introduced the concept of "plausibility" into the analysis, and in that respect our Court of Appeals has "interpreted Twombly and Iqbal to require the plaintiff to provide some specific facts to support the legal claims asserted in the complaint" (McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation marks and brackets omitted)). As McCauley, id. (internal quotation marks again omitted) went on to reconfirm, claimants "must give enough details about the subject-matter of the case to present a story that holds together."

Because the focus of Rule 12(b)(6) motions is on the pleadings, such motions "can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice" (Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). But a nonmovant has more flexibility, for it "may elaborate on [its] factual allegations so long as the new elaborations are consistent with the pleadings" (id.). This opinion evaluates both the Coastal-Stinson motion and the Snyder motion in accordance with those principles.

**Personal Jurisdiction**

Each motion to dismiss must establish that it would be improper for this District Court to exercise in personam jurisdiction over the movant or movants. Personal jurisdiction must of course be sustainable under both state law and the United States Constitution. And because Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 111 (1987) requires a federal court to determine whether the state in which it sits authorizes the exercise of personal jurisdiction, this opinion looks to the Illinois long-arm statute for that purpose (there are some federal statutory

provisions that allow nationwide service of process, but no such provision is present in either the Lanham Act or the Computer Fraud and Abuse Act).

Stinson and Coastal contend that Illinois' long-arm statute, 735 ILCS 5/2-209, does not grant this Court jurisdiction over either them. They argue that none of its predicates for haling them into court here applies to them, for neither of them transacted business, committed a tort or entered into a contract substantially connected to Illinois. Snyder similarly argues in his separate motion that he has never been to Illinois, has no property in Illinois, runs no business there and has no connection with Hang Glide by way of written contract.

In response Hang Glide urges personal jurisdiction exists over Coastal and Stinson because they are in a conspiracy with Monnier and Snyder, but our Court of Appeals has dashed cold water on the prospect of a "conspiracy theory of personal jurisdiction" under Illinois law (Smith v. Jefferson County Bd. of Educ., 378 F. App'x 582, 585-86 (7th Cir. 2010), citing and quoting from recent Illinois Appellate Court opinions). Hang Glide further argues that even apart from the notion of a conspiracy, Coastal and Stinson are subject to personal jurisdiction in Illinois because due process is satisfied by their having had "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign" (Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985), quoting Shaffer v. Heitner, 433 U.S. 186, 218 (brackets in quotation)).

All Hang Glide points to on that score is that Coastal allegedly delivered to Monnier and Snyder the possession of plaintiffs' leased premises[4] (as well as possession of the computer and confidential papers), knowing that the premises would be used for a business operating in

---

[4] That assertion is disputed by Coastal, but it is ultimately unhelpful to Hang Glide even if true.

violation of Monnier's Illinois-based employment agreement.  In addition, Coastal directed correspondence to the plaintiffs in Illinois, while the responses to Coastal were sent from Illinois, and that correspondence assertedly created the opportunity to seize the premises and confidential information unlawfully and turn them over to Monnier and Snyder.  Hang Glide contends that the combination of all those things gave rise to Coastal's and Stinson's knowledge that harm to Hang Glide from their turning over property to a competing company would be felt here in Illinois by Illinois residents.  Lastly, of course, during the term of the Coastal-Hang Glide lease all the payments of rent had emanated from Illinois.

But all of those asserted ties between Coastal and Stinson on the one hand and Illinois on the other to which Hang Glide points do not carry the day for Hang Glide on the in personam jurisdiction front.  There must be more than economic impact to support personal jurisdiction over Coastal or Stinson under the long-arm statute's due process requirement -- a principle that our Court of Appeals has adhered to for at least three decades (see Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc., 751 F.3d 796, 801 (7th Cir. 2014) and Young v. Colgate-Palmolive Co., 790 F.2d 567, 570-71 (7th Cir. 1986)).  And when as here a claimed injury is purely economic, the plaintiff must allege facts showing that the defendant intended to affect an Illinois interest, akin to the purposeful-availment requirement (Aasonn, LLC v. Delaney, 2011 IL App (2d) 101125 ¶ 16, 961 N.E.2d 939, 947 (2d Dist. 2011)).

In sum, the analysis of asserted forum-related factors here is much the same as, and arrives at the same destination as, that in Advanced Tactical, 751 F.3d at 801-03.  It is simply not enough for Hang Glide to rely on the obvious foreseeability that its economic injury would be sustained here in Illinois.  Hence the Coastal-Stinson motion for their dismissal from the case

(Dkt. No. 21) is granted, and this action is dismissed against each of them for lack of personal jurisdiction in Illinois.

When it comes to the existence of personal jurisdiction over Snyder, Hang Glide argues that Monnier and Snyder were partners in a business (FAS) that was formed in violation of Monnier's Employment Agreement, an agreement that contained both an Illinois choice of law provision and the designation of an exclusive Illinois choice of forum. Hang Glide also points to Snyder's having received flight training from Hang Glide in Illinois, [5] to his having phoned Heitzinger in Illinois to arrange business and to his having sent payment to Heitzinger in Illinois. Hang Glide contends not only that Snyder knew that his conduct would have an Illinois impact but also that he had sufficient contacts with Illinois to subject him to suit in this forum.

What has been said in the just completed analysis as to Coastal and Stinson confirms with even greater force that the fragmentary relationships with Illinois referred to in the previous paragraph are insufficient to subject Snyder to suit in this jurisdiction. Hang Glide essentially asks this Court to forget the legal elephant in the room -- the fact that all of the alleged wrongdoing by Snyder took place in Florida and <u>not</u> in Illinois.

To be sure, Snyder hooked up in a partnership (FAS) with Monnier, someone as to whom Illinois jurisdiction has been established by his employment contract with Hang Glide. And that partnership renders each partner the agent of the other. In that respect the Illinois long-arm statute, 735 ILCS 5/2-209(a) (emphasis added), could potentially render Snyder subject to this Court's jurisdiction because of the acts of his agent Monnier:

---

[5] Although the claim that Snyder received flight training in Illinois appears to contradict Snyder's claim of not having set foot in Illinois, any dispute on that score need not be resolved here. Even if Hang Glide's version is accepted, that would not affect the analysis or the conclusion reached in this opinion.

> Any person, whether or not a citizen or resident of this State, who in person or <u>through an agent</u> does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

But any such effort to bootstrap Snyder into this Illinois District Court through the medium of Monnier's actions is deep-sixed by the laundry list of 14 "such acts" that follow the just-quoted statutory long-arm language. Only one of those acts, the eleventh listed, could even arguably have been committed <u>by</u> <u>Snyder</u>, either "in person or through an agent" (that is, in the latter alternative, through Monnier):

> (11) The breach of any fiduciary duty within this State.

And on that score it must not be forgotten that nothing asserted by either Snyder or Monnier even arguably constitutes the breach of any fiduciary duty owed <u>by</u> <u>Snyder</u> to Hang Glide -- none existed or has even been suggested.

To put the same principle in somewhat different (but conceptually related) terms, to support in personam jurisdiction over defendant Snyder his relationship with Illinois must have arisen "out of the contacts that the 'defendant <u>himself</u>' creates" with this forum State (<u>Walden v. Fiore</u>, 134 S. Ct. 1115, 1122 (2014), citing <u>Burger King</u>, 471 U.S. at 475 (emphasis in original)). Hang Glide's Complaint has clearly failed in that respect. Accordingly Snyder's motion for his dismissal for want of personal jurisdiction (Dkt. No. 15) is also granted.

With all three movants thus having been dismissed out of the case, it is unnecessary to consider any of the other contentions that they have advanced for dismissal. Those arguments remain for another day in another courtroom.

**Conclusion**

For the reasons stated in some detail in this opinion, both the Coastal-Stinson motion (Dkt. No. 21) and the Snyder motion (Dkt. No. 15), each of which seeks a dismissal of the movant or movants for lack of personal jurisdiction, are granted. Because that result poses a number of possibilities as to the future of this litigation, a status hearing is set at 9 a.m. on April 27, 2017, with counsel for all parties (including counsel for the dismissed defendants) required to be present to discuss further proceedings in the case.

_____
Milton I. Shadur
Senior United States District Judge

Date: April 18, 2017